UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SHARI J. GYLLING,

        Plaintiff,

   v.

MICHAEL J. ASTRUE[1], Commissioner of Social Security,

        Defendant.

CASE NO.   C06-5642FDB-KLS

REPORT AND RECOMMENDATION

Noted for August 24, 2007

Plaintiff, Shari J. Gylling, has brought this matter for judicial review of the denial of her applications for disability insurance and supplemental security income ("SSI") benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Honorable Franklin D. Burgess' review.

FACTUAL AND PROCEDURAL HISTORY

Plaintiff currently is 35 years old.[2] Tr. 33. She has a college education and past work experience as

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d)(1), Michael J. Astrue, who recently became acting Commissioner of Social Security, hereby automatically is substituted for Joanne B. Barnhart.

[2] Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION
Page - 1

a clerical assistant, long distance driver, program assistant, dispatcher, licensing/titling agent, file clerk, cashier, helper/courtesy clerk in a grocery store, and restaurant hostess. Tr. 23, 30, 92, 97, 109.

On June 29, 2002, plaintiff protectively filed applications for disability insurance and SSI benefits, alleging disability as of December 27, 2001, due to severe asthmatic reactions to chemicals such as perfumes, cleaners, air fresheners, and incense. Tr. 22-23, 77-79, 91, 340-41. Her applications were denied initially and on reconsideration. Tr. 33-35, 41, 342, 346, 349-50. A hearing was held before an administrative law judge ("ALJ") on September 16, 2004, at which plaintiff, represented by counsel, appeared and testified. Tr. 363-85.

On March 14, 2005, the ALJ issued a decision, determining plaintiff to be not disabled, finding specifically in relevant part:

(1) at step one of the sequential disability evaluation process,[3] plaintiff had not engaged in substantial gainful activity since her alleged onset date of disability;

(2) at step two, plaintiff had "severe" impairments consisting of asthma/chemical sensitivity and obesity;

(3) at step three, none of plaintiff's impairments met or equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4) at step four, plaintiff had the residual functional capacity to perform a modified range of light work, which did not preclude her from performing her past relevant work; and

(5) in the alternative, at step five, plaintiff was capable of performing other jobs existing in significant numbers in the national economy.

Tr. 31-32. Plaintiff's request for review was denied by the Appeals Council on September 28, 2006, making the ALJ's decision the Commissioner's final decision. Tr. 6; 20 C.F.R. § 404.981, § 416.1481.

On November 2, 2006, plaintiff filed a complaint in this Court seeking review of the ALJ's decision. (Dkt. #1-#3). Specifically, plaintiff argues that decision should be reversed and remanded for an award of benefits or, in the alternative, for further administrative proceedings for the following reasons:

(a) the ALJ erred in finding plaintiff did not have a severe mental impairment;

(b) the ALJ erred in assessing plaintiff's credibility;

(c) the ALJ erred in assessing plaintiff's residual functional capacity;

---

[3]The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step, the disability determination is made at that step, and the sequential evaluation process ends. Id.

REPORT AND RECOMMENDATION
Page - 2

(d)     the ALJ erred in finding plaintiff capable of returning to her past relevant work; and

(e)     the ALJ erred in finding plaintiff capable of performing other work existing in significant numbers in the national economy.

The undersigned agrees the ALJ erred in determining plaintiff to be not disabled, but, for the reasons set forth below, recommends that while the ALJ's decision should be reversed, this matter should be remanded to the Commissioner for further administrative proceedings.

## DISCUSSION

This Court must uphold the Commissioner's determination that plaintiff is not disabled if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold the Commissioner's decision. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.     The ALJ Properly Found Plaintiff Did Not Have a Severe Mental Impairment

At step two of the sequential disability evaluation process, the ALJ must determine if an impairment is "severe." 20 C.F.R. § 404.1520, § 416.920. An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. [§ 404.1520(a)(4)(iii), (c), § 416.920(a)(4)(iii), (c); Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1. Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b), § 416.921(b); SSR 85- 28, 1985 WL 56856 *3.

An impairment is not severe only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work." See SSR 85-28, 1985 WL 56856 *3; Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988). Plaintiff has the burden of proving that her "impairments or their symptoms affect her ability to perform basic work activities." Edlund v. Massanari, 253 F.3d 1152, 1159-60 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599,

601 (9th Cir. 1998). The step two inquiry described above, however, is a *de minimis* screening device used to dispose of groundless claims. Smolen, 80 F.3d at 1290.

Here, the ALJ made the following step two finding:

> I . . . do not find that the claimant has a severe mental impairment. The claimant has undergone counseling, but the focus of counseling has been on relationships with her mother, which have been difficult, and dealing with stress. These difficulties do not indicate any specific impairment. It has been suggested that the claimant has bipolar disorder, but there is no record of continuing treatment. Mr. [sic] [Sohyon Min] Rahe[, M.S., C.S., A.R.N.P.] indicates that she has not worked due to problems with concentration and mood swings, but the record shows that the claimant consistently reported problems with asthma and breathing around certain fumes. I concur with the findings of the State Agency physicians that the claimant has no severe mental impairment. I give no weight to the opinion of Mr. [sic] Rahe, a nurse practitioner, that she is disabled by bipolar disorder. Ms. Rahe has no demonstrated credentials to make psychiatric diagnoses. The conclusion that the claimant cannot deal with stress and has problems with concentration is inconsistent with the claimant's college education completed in 2000 and her x-ray technician training since her alleged onset [date of disability]. The claimant did not focus on any mental impairment at the hearing and seemed to feel that it was her chemical reactions that disabled her.

Tr. 27. Plaintiff argues the ALJ erred in so finding. The undersigned disagrees.

Specifically, plaintiff argues the ALJ mischaracterized the evidence in the record concerning her mental health counseling, asserting that evidence shows she was having problems with depression and a bipolar disorder. The undersigned agrees that contrary to the ALJ's statements on this issue, the mental health counseling notes in the record do show at least some references to a diagnosis of bipolar disorder. See Tr. 176, 200, 203, 330. The ALJ's larger point, however, is correct. That is, despite these references, there is no evidence of her receiving continuing treatment for that disorder. Plaintiff asserts she took medication for bipolar disorder, but she cites to no portion of the record as support for this assertion, nor can the undersigned find any such support.[4] Accordingly, the undersigned finds that it was not improper for the ALJ to find that the counseling progress notes indicated little in the way of any particular mental impairment that impacted plaintiff.

Plaintiff next argues the ALJ erred in adopting the findings and opinion of James E. Bailey, Ph.D., a state agency consulting non-examining psychologist, over those of Ms. Rahe, his mental health treatment provider. However, a licensed psychologist, even a non-examining one, is an "acceptable medical source"

---

[4] There is one reference to plaintiff currently taking medication for bipolar disorder in late January 2003. See Tr. 311. This reference, however, appears to be based on plaintiff's own self-report, and there is no other indication in the record that plaintiff actually has been prescribed such medication.

REPORT AND RECOMMENDATION
Page - 4

1 as that term is defined in the Social Security Regulations, and thus may be given more weight than those of
2 non-acceptable medical sources, such as Ms. Rahe. <u>See</u> <u>Gomez v. Chater</u>, 74 F.3d 967, 970-71 (9th Cir.
3 1996); 20 C.F.R. § 404.1513(a), (d), § 416.913(a), (d).  Thus, plaintiff's citation to <u>Tonapetyan v. Halter</u>,
4 242 F.3d 1144, 1149 (9th Cir. 2001), is misplaced, as that decision in that case solely concerned the weight
5 to be given to treating and examining <u>physicians</u> vis-a-vis non-examining physicians.[5]

6      Dr. Bailey opined that plaintiff had no severe mental impairment. <u>See</u> Tr. 157-69.  Since Dr. Bailey
7 is an acceptable medical source and Ms. Rahe is not, the ALJ therefore was not remiss in placing greater
8 weight on his findings and opinions than those of Ms. Rahe.  Indeed, as explained in greater detail below,
9 the objective medical evidence in the record, or rather lack thereof, supports the ALJ's determination on
10 this issue.  For example, Bruce Wright, M.D., and Paula G. Williams, Ph.D. the only other licensed
11 psychiatrist and psychologist in the record also found no significant work-related limitations resulting from
12 plaintiff's mental health issues. <u>See</u> Tr. 310-12.  Plaintiff's mental health counseling progress notes also are
13 generally devoid of such findings. <u>See</u> Tr. 172-79, 181-91, 193, 195-200, 202-03.  Ms. Rahe does opine in
14 early September 2004, that plaintiff was "unable to return to work due to problems with concentration and
15 mood swings," and that her "medications <u>may</u> cause functional impairment such as sedation and motor
16 dysfunction" (Tr. 330) (emphasis added), but, again, there are no objective clinical findings in the record to
17 support these conclusions.

18      Plaintiff also criticizes the ALJ's reliance on Dr. Bailey's opinion on the fact that his opinion was
19 issued in late October 2002, and thus he did not have the benefit of reviewing all of the pertinent medical
20 evidence in the record concerning her mental health issues.  As discussed above, however, that additional
21 evidence contains little in the way of support for finding the presence of significant work-related mental
22 functional limitations.  Accordingly, even if Dr. Bailey had had access to that evidence prior to providing his
23 opinion, the likelihood that he would have changed that opinion is not particularly high.  Thus, the ALJ did
24 not err in relying on Dr. Bailey's opinion to find no severe mental impairment.

25      Plaintiff further takes issue with the ALJ's rejection of Ms. Rahe's findings and opinion due to the

---

[5] In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1996).  An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." <u>Lester</u>, 81 F.3d at 830-31.  A non-examining physician's opinion may constitute substantial evidence, however, if "it is consistent with other independent evidence in the record." <u>Id.</u> at 830-31; <u>Tonapetyan</u>, 242 F.3d at 1149.

REPORT AND RECOMMENDATION
Page - 5

fact that she had no demonstrated credentials to make a psychiatric diagnosis. First, the ALJ did not reject Ms. Rahe's findings and opinion outright merely on this basis. As discussed above, the ALJ found that the record more properly supported the findings and opinion of Dr. Bailey, a finding the undersigned found to be without error. Second, the ALJ is correct. Ms. Rahe is not a licensed psychiatrist, and thus at least in that sense lacks the requisite background and expertise to make psychiatric diagnoses, a consideration that appears to have been contemplated by the Social Security Regulations with respect to the amount of weight and deference to be given to acceptable medical sources as opposed to "other sources." See 20 C.F.R. § 404.1513, § 416.913.

It is true that the ALJ still must consider the evidence presented by Ms. Rahe as an "other source," but the ALJ did so here as discussed above. The ALJ considered the medical evidence in the record with respect to plaintiff's alleged mental health impairments, and determined that the weight of that evidence did not support a finding of severity. This was proper, especially considering that the opinions of sources such as Ms. Rahe generally are treated in the same manner as testimony of lay witnesses. See 20 C.F.R. § 404.1513(d), § 416.913(d) (Commissioner may also use evidence from other sources to show the severity of claimant's impairment(s) and how those impairments affects his or her ability to work). The ALJ thus did not disregard Ms. Rahe's findings and opinion, he merely accorded them their proper weight in relation to the other objective medical evidence in the record.

Plaintiff asserts, however, that more weight is given to the opinion of a specialist regarding medical issues related to his or her area of specialty than to those who are not specialists. See Benecke v. Barnhart, 379 F.3d 587, 594 n.4 (9th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(5)). As such, plaintiff argues, the ALJ erred by not inquiring into Ms. Rahe's area of expertise, especially given the fact that she is a clinical specialist, has a master of science degree, is a registered nurse practitioner, and can prescribe psychotropic medication, suggesting "some level of proficiency in the field of psychiatry." Plaintiff's Opening Brief, p. 16. Again, however, the deference given to specialization is applicable only in the context of opinions that come from "acceptable medical sources." See id.; 20 C.F.R. § 416.927(d)(5). Because, as discussed above, Ms. Rahe is not such a medical source, her opinions are entitled to no such deference.

Plaintiff argues the ALJ erred in finding Ms. Rahe's conclusion that she could not deal with stress and had problems with concentration was inconsistent with her completion of college in 2000, and her x-ray

REPORT AND RECOMMENDATION
Page - 6

1  technician training since her alleged onset date of disability.  First, she asserts she completed college prior to
2  her alleged onset date and during a period when her bipolar disorder apparently was under control.
3  However, there is no objective medical evidence – certainly plaintiff points to none in the record – to
4  support the latter assertion.  Second, while it is true plaintiff completed college prior to her alleged onset
5  date, a fact the ALJ noted, there is no indication in the record she underwent any significant changes in her
6  mental health status subsequent to her graduation.

7       Plaintiff also asserts she was unable to complete her x-ray training program due to her symptoms
8  stemming from her bipolar disorder.  Again, however, there is no reliable evidence in the record to support
9  this assertion.  Although plaintiff testified that she eventually was kicked out of that program due to a
10 personality conflict she had with the program's director, she never testified that this conflict was the result
11 of a specific mental health impairment.  See Tr. 372.  That is, there can exist a personality conflict between
12 two people without that conflict necessarily being caused by an underlying mental health disorder.  Further,
13 the only evidence as to how plaintiff's participation in the program ended comes from her own testimony,
14 which, as discussed below, the ALJ properly discredited.  The mental health counseling notes in the record
15 also show that overall plaintiff was doing well in her training.  See Tr. 172, 178, 181, 184.

16      Lastly, plaintiff argues the ALJ erred in failing to address evidence in the record that she suffered
17 from a somatoform disorder.  While there does appear to be one reference to this diagnosis in the record
18 (Tr. 310), no work-related limitations, significant or otherwise, were noted to result therefrom either at the
19 time of the diagnosis or anywhere else in the medical evidence.  Accordingly, the ALJ had no duty to, and
20 therefore did not err in failing to, address any such evidence.  See Vincent on Behalf of Vincent v. Heckler,
21 739 F.3d 1393, 1394-95 (9th Cir. 1984) (ALJ need not discuss all evidence presented, but must only explain
22 why significant probative evidence has been rejected).  Thus, for all of the above reasons, the ALJ properly
23 found plaintiff had no severe mental impairment.

24 II.     The ALJ Did Not Err in Assessing Plaintiff's Credibility

25      Questions of credibility are solely within the control of the ALJ.  Sample v. Schweiker, 694 F.2d
26 639, 642 (9th Cir. 1982).  The Court should not "second-guess" this credibility determination.  Allen, 749
27 F.2d at 580.  In addition, the Court may not reverse a credibility determination where that determination is
28 based on contradictory or ambiguous evidence.  Id. at 579.  That some of the reasons for discrediting a
   claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long

as that determination is supported by substantial evidence. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001).

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. Id.

The ALJ discounted plaintiff's credibility in part for the following reasons:

> The claimant stated that she was allergic to a variety of cleaners and detergents, but found that a hospital environment was a controlled environment. Hospitals use a wide number of cleaners in order to disinfect their environment. While the claimant testified that she did not go to church, the record shows that she was going to church and that this was largely her social outlet. Attending church would involve exposure to a wide variety of fragrances, colognes, etc., that the claimant says she cannot tolerate. The claimant also went bowling and to school during the period in question and would have been exposed to a number of possible irritants, but she never reported breathing problems related to this. Her tests have been consistently normal, and there is no evidence that she is actually allergic to anything.

Tr. 28. Plaintiff first argues the ALJ's statement that her tests have been normal and that there was no evidence she was allergic to anything is inaccurate, because she has alleged disability due to chemical sensitivities, which are diagnostically distinct from having allergies. The undersigned agrees. Plaintiff has not alleged her limitations stem from her allergies, but from her chemical sensitivities. See Tr. 91. Further, the record does contain medical opinion evidence that the "chemicals and odors" to which plaintiff "has perceived difficulties would not be mediated through allergic mechanisms." Tr. 135. As such, this is not a valid basis on which to discount plaintiff's credibility.

Plaintiff next argues that both the courts and the Commissioner have recognized that a claimant's

REPORT AND RECOMMENDATION
Page - 8

1  symptoms and limitations may be more severe than the objective medical evidence shows. While this may
2  be true, an ALJ's determination that the claimant's complaints are "inconsistent with clinical observations"
3  can satisfy the clear and convincing requirement. Regennitter v. Commissioner of SSA, 166 F.3d 1294,
4  1297 (9th Cir. 1998). This is the case here. While it may not have been proper for the ALJ to rely on the
5  absence of evidence concerning allergies, certainly the objective medical evidence in the record, including
6  clinical testing, fails to reveal any real findings that support plaintiff's allegations.

7        The ALJ, accordingly, also did not err in pointing out that plaintiff had "no significant findings on
8  examination." Tr. 29. Plaintiff further asserts though that because the ALJ found her asthma and chemical
9  sensitivities to be severe (Tr. 27), he could not then find that the record contained no objective medical
10 evidence to support those conditions. But this is not what the ALJ actually found. Rather, the ALJ merely
11 was pointing out, and the undersigned agrees, that the lack of objective medical evidence in the record fails
12 to support plaintiff's allegations that she was disabled and unable to perform any work due to symptoms
13 from her asthma and claimed chemical sensitivities. See Tr. 128-29, 131, 134-35, 139, 143-44, 147-48,
14 205-06, 209-10, 212-13, 247-48, 250-55, 266, 268, 272, 277, 279-80, 282-84, 286-87, 289, 291-92, 296,
15 306, 308. As such, and to that extent, the ALJ did not err.

16       Plaintiff also takes issue with the ALJ's reliance on evidence contained in the record indicating that
17 she was able to be in a hospital environment, attended church despite her later testimony that she did not do
18 so, and went bowling and to school, to find her not credible concerning her allegations of having problems
19 with chemical sensitivities. With respect to the bowling, plaintiff asserts there is no evidence in the record
20 as to the nature and extent of her participation in bowling. However, the mere fact that plaintiff decided to
21 and went bowling, where, as the ALJ reasonably noted she likely "would have been exposed to a number of
22 possible irritants," indicates her sensitivity problem may not have been as bad as she alleged.

23       The undersigned also finds it reasonable for the ALJ to assume that plaintiff would be exposed to a
24 wide variety of cleaners while in a hospital environment, and thus discount her credibility for this reason as
25 well. Plaintiff argues that a hospital environment is fairly sterile and clean, but logically, presumably this is
26 the case because of the regular use of chemicals and other disinfectants to make it so. The fact that she may
27 not have been required to change any chemicals or perform an examination of a patient that came in with
28 perfume is not particularly convincing, given the alleged hyper-reactive nature of plaintiff's chemical

REPORT AND RECOMMENDATION
Page - 9

1  sensitivities, and the fact that she still would likely be exposed to a variety of people and cleaning agents
2  while participating in her training at the hospital.

3  As with plaintiff going bowling and her attending school in a training program in a hospital setting,
4  her attendance at church also likely would expose her to a variety of potential irritants, including perfumes,
5  fragrances and the like as the ALJ reasonably posited.  Plaintiff argues that references in the record to her
6  being "involved in her church," to her having "worked" at church, and to the fact that her support network
7  consisted primarily of church members do not specify the nature and extent of her involvement with her
8  church and church members.  See Tr. 174, 186, 311.  As with plaintiff's arguments noted above, this line of
9  reasoning is not particularly convincing.  The ALJ was not remiss or unreasonable in taking her reported
10 statements at face value, that is, that she worked at and was involved in her church.  This, at the very least
11 implies being both at her church and around other church members.

12 Plaintiff further argues that she testified at her hearing that she currently lived with her grandmother
13 in a different location (Tr. 368, 370), and that this testimony should qualify her later testimony that she did
14 not go to church (Tr. 383).  Taking this testimony together, plaintiff asserts, it is reasonable to assume that
15 she was referring to a different church at the hearing, that not all churches are the same, that she evidently
16 had developed a strong bond to the members of her former church, and that her physical and mental health
17 problems made it difficult for her to establish a similar connection at her new church.  The problem with this
18 argument though is that there is no evidence in the record to support it, other than the fact that she had
19 moved.  Thus, the ALJ's interpretation of plaintiff's testimony is equally reasonably and thus inconsistent
20 with her prior reports.  This was a valid reason, therefore, for discounting her credibility.

21 The ALJ also discounted plaintiff's credibility in part due to the fact that in general her symptoms
22 were "well controlled." Tr. 29.  This too is a valid basis for discounting plaintiff's credibility.  See Morgan v.
23 Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999) (ALJ may discount claimant's
24 credibility on basis of medical improvement); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998).  Plaintiff
25 argues the medical evidence in the record does not support this finding, asserting that despite her taking a
26 number of medications, she still had chemical reactions that sent her to the emergency room on numerous
27 occasions.  The problem here again, however, is that, as discussed above, no significant clinical findings
28 were found as a result of those alleged reactions and emergency room visits.  All that is left as support for

REPORT AND RECOMMENDATION
Page - 10

this argument, therefore, is plaintiff's own testimony, which, also as discussed herein, the ALJ gave plenty of valid reasons for discrediting.

Lastly, the ALJ discounted plaintiff's credibility in part due to her participation in activities of daily living, such as visiting with friends, going to the movies, shopping, cooking, baking, and doing household chores. Tr. 29. To determine whether a claimant's symptom testimony is credible, the ALJ may consider his or her daily activities. Smolen, 80 F.3d at 1284. Such testimony may be rejected if the claimant "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting." Id. at 1284 n.7. The claimant need not be "utterly incapacitated" to be eligible for disability benefits, however, and "many home activities may not be easily transferable to a work environment." Id.

Plaintiff argues this is not a valid basis for discounting her credibility. For example, plaintiff points out that doing household chores took place within the confines of her house, when her main complaint was being exposed to chemicals and other irritants outside the home. See Tr. 101-02. Plaintiff also notes that she reported no longer being able to shop in stores due to her chemical sensitivities, and that she watched movies at home with friends, rather than going out to see them. Id. The undersigned further notes that the record fails to show that plaintiff spent a substantial part of her day performing these activities. As such, the undersigned agrees this was not a valid reason for discounting plaintiff's credibility. Nevertheless, the fact that some of the reasons for discounting plaintiff's credibility was improper does not render the ALJ's credibility determination invalid, as long as that determination is supported by substantial evidence in the record, as it is in this case as discussed above. Tonapetyan, 242 F.3d at 1148.

III.     The ALJ Erred in Assessing Plaintiff's Residual Functional Capacity

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. Id. It thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to

REPORT AND RECOMMENDATION
Page - 11

perform based on all of the relevant evidence in the record. Id. However, a claimant's inability to work must result from his or her "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's residual functional capacity, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

Here, the ALJ assessed plaintiff with the following residual functional capacity:

> [T]he claimant has retained the residual functional capacity to perform light work. Light work requires maximum lifting of twenty pounds and frequent lifting of ten pounds, and includes the capacity for sedentary work. . . . The claimant can occasionally stoop, crouch, and crawl, and she should avoid concentrated exposure to inhaled agents and irritants. . . .

Tr. 29-30. Plaintiff argues that this residual functional capacity assessment is invalid, in that it disregards the opinions of her medical providers that she should avoid all irritants, and not just concentrated exposure thereto. The undersigned agrees that the ALJ did not properly evaluate all of the opinions from plaintiff's medical providers, and thus did not set forth a valid basis for only limiting her to avoiding concentrated exposure to inhaled agents and irritants.

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the

1  ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).  To reject the uncontradicted
2  opinion of either a treating or examining physician, the ALJ must provide "clear and convincing" reasons.
3  Lester, 81 F.3d at 830.  Even when a treating or examining physician's opinion is contradicted, that opinion
4  "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the
5  record." Id. at 830-31.

6  Plaintiff first points out that her treating physician, Stephen P. Hall, M.D., found that her asthma and
7  chemical sensitivities very significantly interfered with her ability to perform basic work-related activities,
8  and that treatment should involve "avoidance of chemicals." Tr. 131, 268-69.  Plaintiff further notes that
9  Lawrence M. Garges, M.D., an examining physician, found that her "limiting factor" was "being able to
10 avoid those things" that would "trigger significant nasal and pulmonary symptoms," and that she needed to
11 be able to "control her environment." Tr. 245-46, 255.  In addition, plaintiff notes that another examining
12 physician, Steven M. Kennerman, D.O., suggested that "she try as best as possible to limit exposures to
13 those things to which she feels she is sensitive." Tr. 135.  Finally, plaintiff cites the findings of Nancy
14 Gregory, A.R.N.P., who also treated plaintiff, and who opined that the only treatment available to her was
15 to avoid chemical and other irritants. Tr. 221, 223, 225, 227, 229, 243, 271, 274, 277.

16 With respect to Dr. Hall's opinion, the ALJ stated that he gave "some weight" to his conclusion that
17 plaintiff "needed retraining for a vocation that would avoid her exposure to chemicals" Tr. 26, 269.  The
18 ALJ, however, did not explain why he gave that conclusion only some weight, or why in doing so he found
19 plaintiff should be limited to avoiding only concentrated and not all exposure.  In addition, nowhere in his
20 opinion does the ALJ appear to have addressed the opinion of Dr. Kennerman.  While that opinion does not
21 necessarily stand for the proposition that plaintiff should avoid all exposure to chemicals and other irritants,
22 the ALJ gave no reason as to why the restriction Dr. Kennerman did impose is more analogous to avoiding
23 only concentrated exposure.  In regard to evaluating the opinions of Dr. Hall and Dr. Kennerman, therefore,
24 the undersigned finds the ALJ erred.

25 On the other hand, the undersigned finds the ALJ properly rejected the opinions of Ms. Gregory.  In
26 regard to those opinions, the ALJ found in relevant part as follows:

27     I give no weight to the opinions of Ms. Gregory.  She is a nurse practitioner, and, as
    such, is not an acceptable medical source under the [Social Security] Regulations.
28     Additionally, her evaluations contain no objective findings of limitations, but, instead
    rely on the claimant's reported inability to work due to her exposure to chemicals. . . .

REPORT AND RECOMMENDATION
Page - 13

1  Tr. 28-29.  As discussed above, Ms. Gregory is not an acceptable medical source, and therefore the ALJ
2  may give her opinions less weight.  Also as discussed above, there is a dearth of objective clinical findings in
3  the record, including those of Ms. Gregory, to support plaintiff's allegations of significant problems with
4  chemical sensitivities.  As such, it does appear, as the ALJ found, that Ms. Gregory relied for the most part
5  on plaintiff's own self-reports.  Given the lack of objective clinical findings and, again as discussed above,
6  that the ALJ properly discounted plaintiff's credibility, the undersigned finds the ALJ did not err in giving
7  no weight to the opinions of Ms. Gregory.

8  Finally, with respect to the opinion of Dr. Garges the ALJ made the following findings:

> I have considered the opinion of Dr. Garges and give it some weight, but note, again, that this opinion is largely based on the claimant's self reported problems and the fact that the claimant had not been able to hold down a job.  He noted that her attempt to change her work environment was a reasonable one, but did not address the fact that there are clerical jobs in a hospital environment.

12  Tr. 29.  Here too the ALJ was not remiss in discounting Dr. Garges' opinion due to the lack of objective
13  medical evidence to support that opinion, and its reliance on plaintiff's self-reports regarding her problems
14  and work history. See Tr. 247-56.  The ALJ thus did not necessarily err in giving only some weight to the
15  limitations Dr. Garges imposed.  Indeed, the limitation to avoiding only those things that would trigger
16  "significant nasal and pulmonary symptoms" would appear to be more in line with a restriction to avoiding
17  concentrated, rather than all, exposures. Tr. 255.  The need to control her environment can, and should, be
18  read in conjunction with this limitation, as applying only to significant exposures as well.

19  Plaintiff again argues the ALJ's finding that her breathing problems were adequately controlled by
20  medication is not supported by the evidence in the record, as shown by the many emergency room visits she
21  had for breathing problems.  As discussed above and as properly found by the ALJ, however, the findings
22  from those visits contained little in the way of objective medical evidence to support plaintiff's claims that
23  her pulmonary or breathing problems, regardless of the fact that she may have been seen in the emergency
24  room on a number of occasions, resulted in significant work-related limitations.

25  Plaintiff's claim that she would have had even more emergency room visits if she had not stopped
26  going outside of her home, is simply not supported by any evidence in the record other than perhaps her
27  own testimony, which, again, the ALJ properly discredited.  Plaintiff next claims the ALJ failed to consider
28  the effect her obesity had on her breathing problems, but once more there is no objective medical evidence

in the record, and plaintiff points to none, to show her obesity had a significant impact on her breathing, let alone on her ability to perform work-related activities. The fact that the ALJ found her obesity to be severe at step two of the sequential disability evaluation process is irrelevant here, as that step constitutes merely a *de minimis* device to dispose of groundless claims.

Similarly, plaintiff's assertion that the ALJ failed to consider the effects of her alleged chronic sinus infections, which, she argues, presumably limited her ability to perform basic work activities when severe, is equally without merit. That is, plaintiff simply has pointed to no evidence, objective or otherwise, in the record to establish the existence of any such effects. The presumed limitation in ability plaintiff suggests here, needless to say, is wholly insufficient to meet her burden of proof on this issue. See Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999) (claimant has burden of proof on steps one through four of the sequential disability evaluation process). Lastly, because, as discussed above, the record also is devoid of objective medical evidence to support plaintiff's claim that her mental health issues imposed significant limitations on her ability to do work-related activities, this claim too fails.

IV.   The ALJ Erred in Finding Plaintiff Capable of Returning to Her Past Relevant Work

Plaintiff has the burden at step four of the sequential disability evaluation process to show that she is unable to return to her past relevant work. Tackett, 180 F.3d at 1098-99. Here, the ALJ made the following step four findings:

> The claimant reported her clerical jobs as sedentary work, certainly no more than light work (exhibit 6E).
>
> The claimant's work as a clerk could be performed within her exertional restrictions, and because of her demonstrated ability to work in a hospital, it is clear that she can work as a clerk in a hospital environment. In such an instance, the claimant can be found not disabled because she can return to her past relevant work.
>
> However, the evidence shows that the claimant has not worked as a clerk specifically within a hospital setting. Although that would probably make little difference in the ability to perform clerical duties in a hospital setting, I elected to consider the possibility that the claimant cannot perform past work.

Tr. 30. Citing to Social Security Ruling 82-62, 1982 WL 31386, plaintiff argues the ALJ improperly found her capable of performing work as a clerk in a hospital because she had not performed that particular job in the past, and thus the ALJ failed to make his step four finding based on the physical and mental demands of her past work. The undersigned agrees.

As plaintiff points out, the ALJ himself admitted that plaintiff had not in fact worked as a clerk in a

REPORT AND RECOMMENDATION
Page - 15

hospital before. It also is not clear that plaintiff has demonstrated an ability to do so, as she merely has participated in a training program in a hospital setting. In addition, the ALJ's feeling that this lack of direct past hospital work experience probably would make little difference runs contrary to the requirement that adequate and sufficient documentation of the demands and requirements of a claimant's particular past work be obtained. Id. at *3. Further, the fact that plaintiff's past clerical work may have encompassed many of the same job duties as those described by the Dictionary of Occupational Titles for clerk jobs in hospital settings, as defendant contends, ignores the simple fact that the ALJ made no such findings, and, indeed, found it unnecessary to do so.

V.     The ALJ's Step Five Analysis Was Improper

If a claimant cannot perform his or her past relevant work, at step five of the sequential disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. Tackett, 180 F.3d at 1098-99; 20 C.F.R. § 416.920(d), (e). The ALJ can do this either through the testimony of a vocational expert or by reference to the Commissioner's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

The Grids may be used only if they "*completely and accurately* represent a claimant's limitations." Tackett, 180 F.3d at 1101 (emphasis in the original). That is, the claimant "must be able to perform the *full range* of jobs in a given category." Id. (emphasis in the original). If the claimant "has significant non-exertional impairments," however, reliance on the Grids is not appropriate.[6] Ostenbrock, 240 F.3d at 1162; Tackett, 180 F.3d at 1102 (non-exertional impairment, if sufficiently severe, may limit claimant's functional capacity in ways not contemplated by Grids).

Here, the ALJ made the following step five findings:

> In this case, the claimant is able to perform light work. She has other limitations to occasional postural movements and to avoid concentrated exposure to inhaled irritants. But those limitations do not significantly erode the occupational base of light work (SSR 85-15, SSR 96-9p), and her capacity to perform unskilled light work remains substantially intact. Her medical and vocational factors coincide with [Grid] rules 202.21 or 202.22, which mandate a finding that the claimant is not disabled. I therefore conclude that there are jobs, existing in significant numbers in the national economy,

---

[6]"Exertional limitations" are those that only affect the claimant's "ability to meet the strength demands of jobs." 20 C.F.R. § 404.1569a(b). "Nonexertional limitations" only affect the claimant's "ability to meet the demands of jobs other than the strength demands." 20 C.F.R. § 404.1569a(c)(1).

REPORT AND RECOMMENDATION
Page - 16

> which the claimant is able to perform within her particular vocational ability, even if she could not return to her past work. She is therefore not disabled on those grounds as well.

Tr. 30. First, plaintiff argues the ALJ erred in failing to include the limitation that she cannot work around chemical or other irritants. As discussed above, the ALJ erred in evaluating the opinions of Dr. Hall and Dr. Kennerman regarding this limitation. Thus, while it is not clear the ALJ would be required to actually adopt that limitation, neither is it clear the ALJ was correct in adopting the less restrictive limitation to no concentrated exposure to such irritants. To this extent, the ALJ erred.

Because there is no reliable vocational evidence in the record to support plaintiff's further claim that her inability to be around chemical irritants and need to control her environment effectively would eliminate all job options outside of her home, however, the undersigned rejects that claim. For the same reason, the undersigned also rejects plaintiff's contention that even accepting the ALJ's limitation to no concentrated exposure, she still would be disabled. Specifically, plaintiff asserts her frequent absences would prevent her from being able to work on a regular and sustained basis, but again she points to no medical or vocational evidence in the record to support that assertion.

On the other hand, the undersigned does agree that the ALJ should have elicited the testimony of a vocational expert to assist him with his step five determination, because even the ALJ's limitation to avoiding only concentrated exposure to inhaled agents and other chemical irritants constitutes a significant non-exertional limitation. For example, the Ninth Circuit has noted that the "[i]nability to tolerate dust or fumes is one example given in the [medical-vocational] guidelines of an environmental restriction not factored into the [Grid] Rules." Kail v. Heckler, 722 F.2d 1496, 1498 (9th Cir. 1984) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(e)). In Kail, the court of appeals noted the evidence in that case indicated that dust, gases, humidity, and heat aggravated the claimant's respiratory problems. Id. at 1497.

In this case, if plaintiff is correct in claiming she is restricted to avoiding exposure to all chemical and other irritants, this clearly would be deemed an inability to tolerate such exposure and thus constitute a significant non-exertional limitation. Even if the ALJ's limitation to avoiding only concentrated exposure to such irritants is more proper, however, the undersigned finds that this still would constitute a significant non-exertional limitation. The evidence in Kail involved the situation where the claimant's condition was aggravated by certain environmental factors, not that he was unable to tolerate them at all. In addition,

1  having to avoid concentrated exposure to irritants certainly would preclude at least some types of jobs.

2  Accordingly, the ALJ should have obtained vocational expert testimony to address this issue. On
3  the other hand, for the reasons set forth above – that is, the lack of objective medical evidence in the record
4  concerning work-related restrictions – the undersigned rejects the contention that plaintiff's mood swings
5  and limited ability to concentrate and deal with stress amounted to significant non-exertional limitations. As
6  such, the ALJ was not required to obtain the testimony of a vocational expert to consider the effects, or
7  lack thereof, of those alleged symptoms, or to factor them into his step five analysis.

## VI.  This Matter Should Be Remanded for Further Administrative Proceedings

9  The Court may remand this case "either for additional evidence and findings or to award benefits."
10 Smolen, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course,
11 except in rare circumstances, is to remand to the agency for additional investigation or explanation."
12 Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in
13 which it is clear from the record that the claimant is unable to perform gainful employment in the national
14 economy," that "remand for an immediate award of benefits is appropriate." Id.

15 Benefits may be awarded where "the record has been fully developed" and "further administrative
16 proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d
17 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's]
> evidence, (2) there are no outstanding issues that must be resolved before a
> determination of disability can be made, and (3) it is clear from the record that the ALJ
> would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because,
as discussed above, issues still remain with respect to the nature and extent of plaintiff's ability to tolerate
exposure to chemical and other irritants, her residual functional capacity, and her ability to perform her past
relevant work, this matter should be remanded to the Commissioner for further administrative proceedings.
In addition, if, on remand, plaintiff is found unable to return to her past relevant work, the Commissioner
also shall, with the assistance of testimony obtained from a vocational expert, re-consider whether she is
capable of performing other work existing in significant numbers in the national economy.

## CONCLUSION

Based on the foregoing discussion, the Court should find the ALJ improperly concluded plaintiff

was not disabled, and should reverse the ALJ's decision and remand this matter to the Commissioner for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have ten (10) days from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **August 24, 2007**, as noted in the caption.

DATED this 30th day of July, 2007.

Karen L. Strombom
United States Magistrate Judge